# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DARRYL TAYLOR,

               Petitioner,    :    Case No. 1:17-cv-267

  - vs -                           District Judge Michael R. Barrett
                                     Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution

                                  :

               Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Darryl Taylor to obtain relief from his conviction for drug trafficking in the Lawrence County, Ohio, Court of Common Pleas (Petition, ECF No. 1).

**Procedural History**

Taylor was indicted by the Lawrence County grand jury on September 24, 2014, and charged with trafficking oxycodone in the presence of juveniles, three other drug felonies, and a firearm specification. After his motion to suppress evidence obtained by a confidential informant was denied, he was tried to a jury and convicted on all charges except the firearm specification. He was then sentenced to thirteen years of imprisonment, the term he is now serving.

Taylor appealed to the Ohio Fourth District Court of Appeals which affirmed except for failure to advise of a mandatory term of post-release control. *State v. Taylor*, 2016 Ohio App.

LEXIS 1644 (4th Dist. Apr. 27, 2016), appellate jurisdiction declined, 147 Ohio St. 3d 1446 (2016). Taylor moved to reopen his appeal to raise claims of ineffective assistance of appellate counsel (State Court Record, ECF No. 6, PageID 164). The Fourth District declined to reach the merits of the application, concluding Taylor had failed to properly present his claims. *State v. Taylor*, Case No. 15 CA 12 (4th Dist. Aug. 30, 2016)(unreported; copy at State Court Record, ECF No. 6, PageID 179-82). Taylor unsuccessfully sought review in the Ohio Supreme Court. *State v. Taylor,* 147 Ohio St. 3d 1446 (2016).

At the time the Return of Writ was filed, Taylor had a pending appeal from his resentencing. That case does not involve any issue presented here, so the exhaustion doctrine does not prevent this Court from proceeding.

Taylor filed his Petition in this Court on April 5, 2017, pleading the following grounds for relief:

> **GROUND 1:** Petitioner's motion to suppress evidence in his case should have been granted because of the lack of a proper search warrant due to the insufficient probable cause and sufficiency of the affidavit, thus, violating his Fourth Amendment of the United States Constitution and Article 1, Section 14 of the Ohio Constitution.
>
> **GROUND 2:** The admission of evidence alleged to confirm the first controlled buy of drugs violated the petitioner's right against unreasonable search and seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 14 of the Ohio Constitution.
>
> **GROUND 3:** The evidence presented at trial is insufficient to support petitioner's conviction for drug trafficking, which conviction is manifestly against the weight of the evidence, and the defense of entrapment is established, thus, acquittal is appropriate.
>
> **GROUND 4:** The petitioner was denied effective assistance of appellate counsel when he failed to raise petitioner's constitutional right to have the assistance of counsel for his defense.

> **GROUND 5:** The petitioner was denied effective assistance of appellate counsel when he failed to raise petitioner's constitutional right to raise petitioner's constitutional right to a fair trial by impartial, indifferent jurors.
> .

(Petition, ECF No. 1, Page ID # 4, 6,11, 16 and 20).

# Analysis

**Grounds One and Two: Violations of the Fourth Amendment**

In his first two grounds for relief, Taylor alleges his Fourth Amendment rights were violated by the admission of evidence obtained from him in that the first controlled buy of drugs was an unreasonable search and the subsequent search of his home was performed in execution of a search warrant which was not supported by probable cause.

Although the State asserts a procedural default defense to these two grounds, a more fundamental problem, also raised by Respondent, is that they are not cognizable in habeas corpus. Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465, 494-95 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration

of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id.* at 526.

In his Reply to the Return of Writ, Taylor asserts he did not get a full and fair opportunity to litigate his Fourth Amendment claims because the Common Pleas Court failed to hold a suppression hearing (ECF No. 8, PageID 517). He notes that his attorney filed a motion to suppress (State Court Record, ECF No. 6, PageID 43-44). In the decision on that motion, the trial judge wrote as an introductory paragraph, "Defendant's motion to suppress came on for hearing before the Court with the Defendant, Defense Counsel and Prosecuting Attorney present and before the Court." *Id.* at PageID 47. Taylor claims this is a "bold fabrication. Petitioner avers that he attended no such hearing, and a search of the record provide[s] no transcript depicting the same." (Response, ECF No. 8, PageID 517.)

Taylor is correct that the State Court Record does not included any transcript of a suppression hearing. Taylor claims this violates the Court Reporter Act, 28 U.S.C. § 753(b), but that statute only applies to the recording of proceedings in federal courts. It is likely, instead, that

4

the opening language of the trial judge's decision is merely formal language indicating when the motion to suppress was ready for decision. Taylor's counsel did not ask for a hearing on the motion and it appears the issues were well known from the briefs; indeed, Judge Cooper states "[b]oth State and Defendant briefed the arguments of law and submitted them to the Court." (Judgment Entry, State Court Record, ECF No. 6, PageID 47.) The absence of a transcript of any suppression hearing, if in fact one took place, did not prevent the Fourth District from thoroughly considering Taylor's second assignment of error, which challenged only the audio-video recording made by the confidential informant on the first controlled buy, and made no challenge of the search warrant. *State v. Taylor, supra*, ¶¶ 29-38.

In *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013), the Sixth Circuit held an evidentiary hearing was not required by due process and followed its prior conclusion that "opportunity means opportunity . . . the state court need do no more than 'take cognizance of the constitutional claim and render a decision in light thereof." *Id.* at 638, *quoting Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).

> Consistent with *Moore* and with two of the three votes in *Bradley* [*v. Cowan*, 561 F.2d 1213 (1977)], we make clear that the [*Stone v.*] *Powell*[, 428 U.S. 465 (1976)] "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.

*Id.* at 639.

Because Taylor was given a full and fair opportunity to litigate his Fourth Amendment claims, his first two grounds for relief are not cognizable in habeas corpus and should be dismissed.

**Ground Three: Sufficiency of the Evidence**

In his Third Ground for Relief, Taylor asserts that he was convicted on insufficient evidence. Taylor presented this claim on direct appeal to the Fourth District, along with a manifest weight claim that is not cognizable in habeas corpus. That court decided the claim as follows:

> A. Drug Convictions: Sufficiency and Manifest Weight of the Evidence
>
> [*P12] Taylor contends that his convictions for trafficking in oxycodone and trafficking in oxycodone in the presence of juveniles are not supported by sufficient evidence and are against the manifest weight of the evidence. "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That analysis does not include a weighing of the evidence or witness credibility. *See State v. Tolbert*, 4th Dist. Washington No. 15CA5, 2015-Ohio-4733. It simply determines whether the evidence, if believed, would support a conviction. But the weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*
>
> [*P13] In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6254, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless

conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

[*P14] We review Taylor's implicit challenge to the jury's rejection of his affirmative defense of entrapment under the manifest weight of the evidence standard. The sufficiency-of-the-evidence standard is inapplicable when a defendant raises an affirmative defense as justification for the crime because such a defense admits the facts that amount to a violation but interposes a justification for the otherwise illegal conduct. *See State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶30-31 (4th Dist.) We do, however, find entrapment cognizable under a manifest-weight-of-the evidence standard.

[*P15] The jury convicted Taylor of trafficking in oxycodone. R.C. 2925.03(A) sets forth the essential elements of drug trafficking: "No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog.* * *"

[*P16] Taylor claims that his drug convictions are against the manifest weight of the evidence because "[t]here is simply no evidence that [he] independently formed the intent to sell or offer to sell oxycodone as charged in the indictment." We construe this statement to imply he was entitled to an acquittal based upon entrapment. In other words, he claims the genesis of the crimes originated with the state and not him. The trial court gave the jury an instruction on entrapment, but the jury rejected Taylor's entrapment defense and found him guilty on all the trafficking offenses.

[*P17] By raising an entrapment defense, the defendant admits that he committed the offense but seeks to avoid criminal liability for his conduct. *State v. Doran*, 5 Ohio St.3d 187, 193, 5 Ohio B. 404, 449 N.E.2d 1295 (1983); *State v. Pack*, 4th Dist. Athens No. 09CA26, 2009-Ohio-6960, ¶ 9-12. The Supreme Court of Ohio defines entrapment under a subjective test that focuses on the defendant's predisposition to commit an offense. *Doran* at 191. "[E]ntrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *Id.* at paragraph one of the syllabus. The defense is available "when the government acts, under a prearranged agreement, through an 'active government informer,' whether paid or not." *State v. Klapka*, 11th Dist. Lake No. 2003-L-044, 2004-Ohio-2921, ¶ 29, citing *Sherman v. United States*, 356 U.S. 369, 373-374, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). "However, entrapment is not established when government officials 'merely

afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." *Doran* at 192, 449 N.E.2d 1295, quoting *Sherman* 356 U.S. at 372.

[*P18] To assist in determining predisposition, the *Doran* court advanced a nonexclusive list of relevant factors: "(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." *Doran*, 5 Ohio St.3d at 192.

[*P19] Because entrapment is an affirmative defense, the defendant has the burden of going forward, as well as the burden of proving the defense by a preponderance of the evidence. *Id.* at paragraph two of the syllabus; R.C. 2901.05(A). Thus the defendant asserting an entrapment defense must adduce evidence supporting his lack of predisposition. *Doran* at 193. The Supreme Court of Ohio has found this requirement fair:
> The accused, as a participant in the commission of the crime, will be aware of the circumstances surrounding the crime, and is at no disadvantage in relaying to the fact-finder his version of the crime as well as the reasons he was not predisposed to commit the crime. Moreover, the accused will certainly be aware of his previous involvement in crimes of a similar nature which may tend to refute the accused's claim that he was not predisposed to commit the offense. In summary, none of the evidence which is likely to be produced on the issue of predisposition would be beyond the knowledge of the accused or his ability to produce such evidence.

*Id.*

[*P20] The record confirms that Taylor failed to carry his burden to establish the entrapment defense. First, Taylor failed to adduce any evidence that the criminal design in this case originated with a government agent. The Director of the Lawrence County Drug Task Force testified that they received information that Taylor was involved in trafficking in drugs from persons who said they were able to purchase drugs from Taylor. As a result, the Task Force began an investigation of Taylor.

[*P21] The confidential informant testified that prior to making any buys from Taylor, Taylor set up a meeting with her in which he told

her "how we were going to do things." She testified that Taylor told her, "we were never going to talk on the phone. He's never going to hand me the pills and I couldn't get under ten [pills]." The Director also testified that the price that Taylor sold the oxycodone tablets to the informant, $30 per tablet, was indicative of his level of significance in the drug trafficking trade. Taylor's price was lower than that typically sold at the street level, indicating that Taylor is higher up on the drug trafficking chain. After officers searched Taylor's residence, they found an additional nineteen 30 mg oxycodone tablets, a number of small plastic baggies, nine hundred and thirty dollars in cash, a bill counter and a counterfeit bill detector. One of the officers testified that the evidence seized from the search showed that Taylor was involved in drug trafficking.

[*P22] Taylor presented no evidence that the criminal design for the trafficking offenses originated with the government or that a government agent implanted in his mind the disposition to commit these offenses. Thus, the jury's finding that he failed in his burden to prove entrapment was not against the manifest weight of the evidence.

[*P23] Trafficking under R.C. 2925.03(A)(1) requires an intent to sell and trafficking under R.C. 2925.03(A)(2) requires that the offender must know that the substance is intended for sale, but the sale can be made by a person other than the offender. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 29, 32. Here, the state proved that Taylor did more than just intend to sell, he actually knowingly sold oxycodone to the confidential informant. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

[*P24] The state introduced evidence that Taylor met with the confidential informant the day before the first controlled buy and instructed her of the protocol she must follow to purchase oxycodone from him. Several investigators and the confidential informant testified about the three controlled buys and the jury saw the audio-visual recordings of the three sales. The state also presented photographs and testimony concerning the drugs and money recovered in the search of Taylor's home, as well as the testimony and laboratory report of a forensic scientist with the Bureau of Criminal Investigation who testified that she analyzed the tablets Taylor sold and those found in the search and determined that they were 30 mg oxycodone tablets. The state presented testimony

that the bulk amount of oxycodone is 450 milligrams and that each of Taylor's three sales as well as the amount found in his house during the search met or exceeded the bulk amount. R.C. 2925.01(D)(1)(d).

[*P25] On the charge that the trafficking occurred in the presence of juveniles, Taylor claims that the informant "identified two of Mr. Taylor's children playing in the yard at the time of the September 9, 2014 transaction, yet she was unable to provide either their names or physical descriptions with any certainty and the video was inconclusive — casting significant doubt on the first count of the indictment."

[*P26] The state presented sufficient evidence that drug trafficking occurred in the presence of juveniles. Under R.C. 2915.03(A)(1)(C)(1)(c), "if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree." An offense is "committed in the vicinity of a juvenile" if an offender (1) commits the offense within one hundred feet of a juvenile, or (2) within the view of a juvenile. R.C. 2925.01(BB). A "juvenile" is a person under 18 years of age. R.C. 2925.01(N).

[*P27] The confidential informant gave sufficient testimony to establish that there were juveniles present within 100 feet of the controlled buys, even though on cross-examination she was unclear about some of the details. She testified that she personally knows Taylor's children who are both under the age of 18. She identified their gender, race, and ages, and was fairly certain of both of their names and she stated that they were about 20 feet away from her when she purchased the oxycodone. On cross examination she testified that she was certain of one of the child's name, but less certain of the other's. She also stated that she was no longer certain if they had long or short hair because it had been ten months since she saw them during the first controlled buy and it was possible that they had cut or grown out their hair. The confidential informant's testimony provided sufficient evidence that juveniles were within 100 feet of the first controlled buy. The state need not prove details about the children's hair length ten months later or identify them by name to prove that juveniles were present.

[*P28] Based on this substantial, credible evidence, the jury properly found the essential elements of these crimes proven beyond a reasonable doubt and did not clearly lose its way or create a

> manifest miscarriage of justice so as to warrant a reversal. We overrule Taylor's first assignment of error.

*State v. Taylor, supra*.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 204-5 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial

> deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S.Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S.Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

On direct appeal the Fourth District thoroughly considered the evidence presented at trial, including that given on the entrapment defense. It applied the correct legal standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Its application of the *Jackson* standard is not objectively unreasonable and is therefore entitled to deference under 28 U.S.C. § 2254(d). Taylor's Third Ground for Relief should therefore be dismissed.

**Grounds Four and Five: Ineffective Assistance of Appellate Counsel**

In his Fourth and Fifth Grounds for Relief, Taylor asserts he was deprive of his Sixth Amendment right to the effective assistance of counsel in several ways. Respondent claims that review of these claims in habeas is barred by Taylor's procedural default in presenting them to the state courts (Return, ECF No. 7, PageID 511-12).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L. Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L. Ed. 2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir.

14

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord*, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a single method of presenting claims of ineffective assistance of appellate counsel: an application for reopening the appeal under Ohio R. App. P. 26(B). Taylor attempted to raise his claims of ineffective assistance of appellate counsel by filing such an application. However, the Fourth District declined to reach the merits of his claims because of his failure to comply with procedural portions of that rule. It held:

> {¶5} An application for reopening must comply with App.R. 26(B)(2)(a) through (e):

(2) An application for reopening shall contain all of the following:

(a) The appellate case number in which reopening is sought and the trial court case number or numbers from which the appeal was taken;

(b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.

(c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;

(d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;

(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

{¶ 6} Here Taylor failed to include a sworn statement and parts of the record as required by App. R. 26 (B)(2)(d) and (e). Under App. R. 26(B)(2)(d), an applicant must provide a sworn statement of the basis for his claim that appellate counsel's representation was deficient and the manner in which the deficiency prejudicially affected the outcome of the appeal. Taylor's application contains only his unsworn statements of appellate counsel's deficiencies and does not include any statements, sworn or unsworn, about the manner in which the deficiency prejudicially affected the outcome of the appeal. Taylor's failure to include a sworn statement in compliance with App. R. 26(B)(2)(d) is fatal to his application to reopen. *State v. Lechner*, 72 Ohio St.3d 374, 375, 1995-Ohio-25, 650 N.E.2d 449 (1995) (the sworn statement required by App. R. 26(B)(2)(d) is mandatory and the court of appeals properly denied the application because applicant failed to include it); *see also State v. Franklin*, 72 Ohio St.3d 372, 1995-0hio-8, 650 N.E.2d 447 (1995) (an affidavit swearing to the truth of the allegations in the

application falls short of the requirements set forth in App.R. 26(B)(2)(d); application denied).

{¶ 7} Taylor also failed to comply with App. R. 26(B)(2)(e), which requires that he include parts of the record upon which he relies. Taylor cited to a motion to withdraw, a hearing on the motion, and various parts of the trial transcript, but did not include any portion of this record with his application. "App. R. 26(B)(2)(e) places the responsibility squarely upon the applicant to provide the court of appeals with such portions of the record as are available to him." *State v. McNeill*, 83 Ohio St.3d 457, 459, 1998-Ohio-38, 700 N.E.2d 613 (1998) (court of appeals properly denied an application to reopen on the ground that applicant failed to include portions of the record); *State v. Wolfe*, 7th Dist. Belmont No. 97 BA 37, 2000-Ohio-2629, *3 (Dec. 21, 2000) (application denied where appellant cites to a suppression motion, a suppression hearing transcript and his trial transcript but failed to attach any portion of this record to his application).

> A defendant may not point us to pages of the record without ordering that the record be sent to us or copying the relevant pages and then hope that we turn his general allegation of deficiency into a particular one and then hope that we create our own explanations on how his defense could have been prejudiced. We are left unaware of the strength of the three briefly mentioned potential assignments of error, and as the Supreme Court says, "refusal to raise these weak arguments simply does not create a genuine issue of ineffective assistance." *State v. Allen* (1996), 77 Ohio St.3d 172, 173.

*State v. Wolfe*, at *3.

{¶ l8} Taylor has failed to comply with the mandatory requirements of App. R. 26(B) (2) and failed to demonstrate by sworn statement or inclusion of relevant portions of the record that there is a genuine issue regarding the effectiveness of his appellate counsel. We **DENY** appellant's application to reopen his appeal.

*State v. Taylor,* Case No. 15CA12 (Fourth Dist., Aug. 30, 2016)(unreported; copy at ECF No. 6, PageID 179 et seq.).

In this case, the Fourth District recognized the existence of an Ohio procedural rule in the form of a Rule 26(B) application, found that Taylor had not complied with the rule, and enforced

17

it against him.

The adequacy of the state ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Maupin,* 785 F.2d at 138, *citing Henry v. Mississippi,* 379 U.S. 443, 446-48 (1965). Ohio has a legitimate judicial economy interest in having ineffective assistance of appellate counsel claims properly presented for decision by its appellate courts. That interest is independent of federal law.

A habeas petitioner can overcome procedural default by showing excusing cause and prejudice or actual innocence. Although Taylor recites this standard in his Response (ECF No. 8, PageID 514), he makes no effort to show he has complied with the standard. That is, he offers no explanation for his failure to comply with the procedural requirements of Ohio R. App. P. 26(B) and no new evidence to show that he is actually innocent. Therefore his Fourth and Fifth Grounds for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 17, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).